UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

REGIONS BANK, an Alabama
state chartered bank,

       Plaintiff,

v.                          Case No: 2:14-cv-476-FtM-29DNF

LEGAL OUTSOURCE PA, a
Florida professional
association, PERIWINKLE
PARTNERS LLC, a Florida
limited liability company,
CHARLES PAUL-THOMAS PHOENIX,
individually, and LISA M.
PHOENIX, individually,

       Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of plaintiff's Motion to Dismiss Counterclaim and Motion to Strike Demand for Trial by Jury (Doc. #45) filed on February 6, 2015. Defendants filed a Response (Doc. #48) on February 27, 2015.

**I.**

Plaintiff Regions Bank (plaintiff or Regions Bank) initiated this foreclosure action on August 20, 2014, by filing a Verified Complaint against Legal Outsource PA (Legal Outsource), Periwinkle Partners LLC (Periwinkle), Charles Paul-Thomas Phoenix (C. Phoenix), and Lisa M. Phoenix (L. Phoenix) (collectively, "defendants"). (Doc. #1.) On October 6, 2014, each defendant

filed a motion to dismiss and motion to strike the Verified Complaint. (Doc. #24 - Doc. #28.) The Court denied the motions on December 11, 2014 (Doc. #38), and defendants subsequently filed an Answer and Affirmative Defenses to Verified Complaint, Counterclaims, and Demand for Trial by Jury (Doc. #41). Plaintiff now moves to dismiss the Counterclaims and to strike to the demand for a jury trial. (Doc. #45.)

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus,

551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### III.

The facts alleged in the Counterclaim are as follows:  In 2005, Regions Bank provided Legal Outsource with a $450,000 revolving line of credit pursuant to the terms of several written loan documents (the "Legal Outsource Loan"). (Doc. #41, ¶ 8.) The obligation secured by the line of credit matured on February 1, 2014, and was not paid in full. (Id. ¶¶ 9, 21.) Prior to the default, the course of dealing between Regions Bank and Legal Outsource was such that Regions Bank historically renewed the loan upon maturity. (Id. ¶ 10.)

Plaintiff asserts that C. Phoenix executed and delivered a Commercial Guaranty to Regions Bank on May 30, 2013, absolutely and unconditionally guaranteeing repayment of the Legal Outsource Loan. Defendants allege that the signature on the Commercial Guaranty is a forgery. (Id. ¶¶ 11-16.)

In 2011, Regions Bank and Periwinkle executed a loan agreement related to real estate (the "Periwinkle Loan") located at 2407 Periwinkle Way, Sanibel, Florida (the "Property"). (Id. ¶ 17.) Both L. Phoenix and C. Phoenix provided plaintiff with a written guaranty of the Periwinkle Loan pursuant to a "Business Loan Agreement." (Id.) Legal Outsource also executed a Commercial Guaranty absolutely and unconditionally guaranteeing repayment of the Periwinkle Loan.[1] (Id. ¶ 22.) The Periwinkle Loan matures on

---

[1]The "Periwinkle Loan Documents," as identified in plaintiff's Verified Complaint, consist of a Promissory Note in the original principal amount of $1,680,000, executed and delivered by Periwinkle to plaintiff on August 26, 2011 (Doc. #1-6); a Business Loan Agreement executed and delivered by Periwinkle to plaintiff on August 26, 2011 (Doc. #1-7); a Promissory Note in the original principal amount of $1,621,528, executed and delivered by Periwinkle to plaintiff on February 1, 2013 (Doc. #1-8); an Amendment to Promissory Note (Doc. #1-9); a Mortgage executed and delivered by Periwinkle to plaintiff on August 26, 2011, and granting Regions Bank a security interest and mortgage lien in certain collateral located at 2407 Periwinkle Way, Sanibel, Florida 33957 (Doc. #1-10); an Assignment of Rents, executed and delivered by Periwinkle to secure the obligation (Doc. #1-11); a Commercial Security Agreement executed and delivered by Periwinkle to plaintiff on August 26, 2011 (Doc. #1-12); a Commercial Guaranty executed and delivered by Legal Outsource to Regions Bank on August 26, 2011, absolutely and unconditionally guaranteeing repayment of the obligation incurred by Periwinkle (Doc. #1-13); a Commercial Guaranty executed and delivered by C. Phoenix to Regions Bank on

November 26, 2018, and Periwinkle has never missed a scheduled payment. (<u>Id.</u> ¶ 18.)

After it obtained the Periwinkle Loan in August 2011, Periwinkle improved the Property by replacing the roofs, painting the exterior of the buildings, making minor repairs, significantly improving the lift station, and completely remodeling one of the buildings. (<u>Id.</u> ¶ 23.) As a result of the improvements, the Property's fair market value exceeds the balance due on the Periwinkle Loan. (<u>Id.</u> ¶ 24.)

In 2013, Regions Bank started causing defendants operational and financial difficulty by repeatedly demanding financial information that had already been provided. Regions Bank also maintained that Periwinkle violated the "debt service coverage ratio" covenants in October 2013, and asserted a default under the Periwinkle Loan Documents. After Periwinkle demonstrated that Regions Bank's internal calculations did not follow the formula expressed in the loan documents, Regions Bank discontinued its pursuit of this alleged default. (<u>Id.</u> ¶ 30.)

---

August 26, 2011, absolutely and unconditionally guaranteeing repayment of the obligation incurred by Periwinkle (Doc. #1-14); and a Commercial Guaranty executed and delivered by L. Phoenix to Regions Bank on August 26, 2011, absolutely and unconditionally guaranteeing repayment of the obligation incurred by Periwinkle (Doc. #1-15).

On several occasions, Regions Bank asked Periwinkle to collateralize the Legal Outsource Loan with the Property and pressured Periwinkle to pay off the Periwinkle Loan prior to its November 26, 2018 maturity date. (Id. ¶ 32.) Regions Bank also asked Legal Outsource and Periwinkle to refinance their respective loans with another lender.

The Legal Outsource Loan matured on February 1, 2014, and was not paid in full, constituting an event of default. Regions Bank notified Legal Outsource and C. Phoenix of the default and demanded payment in full pursuant to a demand letter dated April 4, 2014. (Id.) Legal Outsource and C. Phoenix, however, did not cure the default. (Id. ¶ 22.)

On April 24, 2014, Regions Bank, by way of letter, notified Periwinkle of the maturity of the Legal Outsource Loan and stated that neither Legal Outsource nor C. Phoenix had paid off the debt. (Id. ¶ 32.) The letter further stated that Legal Outsource and C. Phoenix are guarantors of a loan between Regions Bank and Periwinkle and that their default on the Legal Outsource Loan is an event of default pursuant to the terms of the Periwinkle Loan. (Id.) Regions Bank indicated that it would not initiate litigation as result of the alleged default if it was provided with a term sheet from another lender indicating its willingness to refinance the debt on or before May 9, 2014. (Id.)

6

In a subsequent letter to Periwinkle, dated June 17, 2014, Regions Bank falsely asserted that "an additional event of default exists in that The AT Phoenix Company, which was represented to the Bank as the sole member of Periwinkle Partners LLC, has apparently transferred its interest to third parties." (Id.) Another event of default was identified in a letter dated June 20, 2014, specifically that Periwinkle failed to pay the 2013 ad valorem taxes on the Property. (Id.) Defendants allege that Regions Bank's position with regard to the 2013 ad valorem taxes on the Property differed from its position as to the 2011 and 2012 ad valorem taxes on the Property. (Id. ¶ 34.) Defendants have yet to cure the alleged defaults, prompting the initiation of this action.

Periwinkle asserts counterclaims against Regions Bank for breach of the implied covenant of good faith and fair dealing (Counterclaim I), violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Counterclaim II), breach of contract (Counterclaim III), constructive fraud (Counterclaim IV), and breach of fiduciary duty (Counterclaim V), and C. Phoenix asserts counterclaims for declaratory judgment (Counterclaim VI), constructive fraud (Counterclaim VII), and violation of the FDUTPA (Counterclaim VIII). (Doc. #41.)

## III.

### A.    Breach of Contract

In Counterclaim III, Periwinkle seeks to recover damages for breach of the Periwinkle Loan Documents.   A claim for breach of contract under Florida law requires proof of three elements: (1) the existence of a valid contract; (2) a material breach; and (3) damages.   <u>Havens v. Coast Fla., P.A.</u>, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013).   After reviewing the allegations in the Counterclaim, the Court finds that Periwinkle has failed to provide a short and plain statement of the claim.

Periwinkle alleges that Regions Bank and defendants are parties to the Periwinkle Loan Documents, Regions Bank "violated the express terms or spirt of the [Periwinkle] loan documents," and Regions Bank's conscious and deliberate acts, as described in the Counterclaim, each constitute a breach of the Periwinkle Loan Documents.   (Doc. #41, ¶¶ 65-67.)   These allegations do not adequately identify the nature of the purported breach, forcing the reader to hazard a guess as to what conscious and deliberate acts constitute a breach of the Periwinkle Loan Documents.   Because Periwinkle has failed to put plaintiff on notice as to the nature of the claim against it, Counterclaim III will be dismissed without prejudice.

**B.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

In Counterclaim I, Periwinkle alleges that Regions Bank breached the Periwinkle Loan's implied covenant of good faith and fair dealing.  Plaintiff contends that dismissal of Counterclaim I is warranted because defendants have failed to state a cause of action for breach of contract.  The Court agrees.

Under Florida law, every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations.  A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation.  Centurion Ari Cargo v. UPS Co., 420 F.3d 1146, 1151 (11th Cir. 2005) (citing Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999)). The Eleventh Circuit has held that "a claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." Id.  As discussed above, Periwinkle has failed to state a claim for breach of contract; thus, Counterclaim I must be dismissed for failure to state a claim upon which relief may be granted.

**C.   Violation of the FDUTPA**

Plaintiff asserts that Counterclaims II and VIII should be dismissed because the FDUTPA does not apply to Regions Bank.  The Court agrees.

By its express terms, the FDUTPA "does not apply to . . . [b]anks or savings and loan associations regulated by federal agencies."  Fla. Stat. § 501.212(4)(c).  See also Bankers Trust Co. v. Basciano, 960 So. 2d 773, 778-79 (Fla. 5th DCA 2007).  Defendants allege, on information and belief, that Regions Bank is an Alabama corporation operating as a bank under a charter from the State of Alabama.  (Doc. #41, p. 22.)  There are no allegations indicating that Regions Bank is a federally-regulated bank.  The Court, however, will take judicial notice of the fact that Regions Bank is regulated by the Federal Reserve Board and has been insured by the Federal Deposit Insurance Corporation (FDIC) since January 1, 1934.[2]  Because Regions Bank cannot be subject to liability under the FDUTPA, Counterclaims II and VIII are dismissed.  See Wilson v. EverBank, N.A., ___ F. Supp. 3d ___ , 2015 WL 265648, at *9 (S.D. Fla. 2015).

---

[2] See Federal Deposit Insurance Corporation, BankFind: Regions Bank (FDIC #12368) (last visited May 14, 2014), https://research.fdic.gov/bankfind/detail.html?bank=12368&name=R egions%20Bank&searchName=REGIONS%20BANK&searchFdic=&city=&state= &zip=&address=&searchWithin=&activeFlag=&tabId=1.

**D.   Breach of Fiduciary Duty and Constructive Fraud**

Plaintiff asserts that Counterclaims IV, V, and VII should be dismissed because defendants have failed state a cause of action for breach of fiduciary duty and constructive fraud. Specifically, plaintiff argues that defendants have failed to plausibly allege a fiduciary relationship.

In order to plead a claim for breach of fiduciary duty, a party must allege the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages. Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002). Likewise, "constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005). "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So. 2d 536, 540 (Fla. 5th DCA 2003). It follows that a fiduciary relationship does not exist when the parties are dealing at arm's length because there is no duty imposed on either party to protect or benefit the other. Watkins v. NCNB Nat'l Bank, N.A., 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993).

Here, defendants allege that the Regions Bank owed them various fiduciary duties related to various loans, deposit accounts, and other services, including the safekeeping of certain assets. (Doc. #41, ¶ 37.) Thus, defendants have plausibly alleged that they placed trust in Regions Bank by depositing funds in deposit accounts and that Regions Bank undertook the duties of a fiduciary by holding the deposited funds. Plaintiffs' motion to dismiss Counterclaims IV, V, and VI is therefore denied. See Columbia Bank v. Turbeville, 143 So. 3d 964, 970 (Fla. 1st DCA 2014).

**E.   Declaratory Judgment**

In Counterclaim VI, C. Phoenix seeks declaratory relief regarding the validity of his signature on the Commercial Guaranty absolutely and unconditionally guaranteeing repayment of Legal Outsource Loan. Plaintiff asserts that this claim should be dismissed because the relief requested is duplicative of the relief that would be accorded to C. Phoenix if he were to prevail on certain affirmative defenses. The Court disagrees. If plaintiff voluntarily dismissed the Verified Complaint, the affirmative defenses regarding the enforceability of the Commercial Guaranty would no longer be before the Court, leaving the issue raised in Counterclaim VI unresolved. Thus, the dispute regarding the enforceability of the Commercial Guaranty will not necessarily be resolved by the affirmative defenses and is not duplicative.

Accordingly, plaintiff's motion to dismiss Counterclaim VI is denied.

## IV.

Plaintiff also asks the Court to strike the demand for a jury trial because defendants have knowingly, voluntarily, and intelligently waived any right to a trial by jury. In response to this request, defendants assert that the right to a jury trial was not waived with respect to Counterclaim VI.

"A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary." Bakrac, Inc. v. Villager Franchise Sys., Inc., 164 F. App'x 820, 823 (11th Cir. 2006). To determine whether a jury trial waiver is knowing and voluntary, courts consider, among other factors: (1) the conspicuousness of the provision of the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel. See Collins v. Countrywide Home Loans, Inc., 680 F. Supp. 2d 1287, 1294 (M.D. Fla. 2010); Allyn v. W. United Life Assurance Co., 347 F. Supp. 2d 1246, 1251 (M.D. Fla. 2004). No single factor is determinative; rather, the Court must determine "whether, in light of all the circumstances, the Court finds the waiver to be unconscionable,

contrary to public policy, or simply unfair." <u>Allyn</u>, 347 F. Supp. 2d at 1252.

In Counterclaim VI, C. Phoenix alleges that he never assented to the terms of the Commercial Guaranty and that the signature on the document is a forgery.[3]  These allegations are supported by the Declaration of Laurie Hoeltzel, a handwriting expert, and the Affidavit of Charles PT Phoenix.  (Doc. #41-2; Doc. #41-3.) Because C. Phoenix challenges the very existence of the Commercial Guaranty and has presented evidence regarding the same, the Court cannot conclude that C. Phoenix knowingly and voluntarily waived his right to a jury trial.  <u>See</u> <u>Allyn</u>, 347 F. Supp. 2d at 1255. Accordingly, the motion to strike the request for a jury trial is denied as to Counterclaim VI.

As to the remaining counterclaims, the Court finds that defendants knowingly and voluntarily waived their right to a jury trial.  Each of the Periwinkle Loan Documents contains a section titled "JURY WAIVER" or "Waive Jury," in which the parties to the agreement "waive the right to any jury trial in any action, proceeding, or counterclaim." (Doc. #1-6, p. 2; Doc. #1-7, p. 6; Doc. #1-8, p. 3; Doc. #1-10, p. 6; Doc. #1-11, p. 6; Doc. #1-12, p. 5; Doc. #1-13, p. 4.; Doc. #1-14, p. 4; Doc. #1-15, p. 4.)  The

---

[3]Defendants do not otherwise challenge the validity of the loan documents attached to plaintiff's Verified Complaint.

Legal Outsource Loan documents contain a similar provision. (Doc. #1-1, p. 3; Doc. #1-2, p. 5.)  The waiver provisions are located in separate paragraphs, printed in a font that is the same size as the rest of the document, and worded in clear and unambiguous language.  Thus, the waivers cannot be considered to be hidden within the document.  See Hooper v. Ideal Image Dev. Corp., No. *:14-cv-2778-T-30EAJ, 2015 WL 1508494, at *1 (M.D. Fla. Apr. 1, 2015).

The jury trial waivers are sufficiently worded in plain, clear language, allowing an unsophisticated, inexperienced person to understand that the right to a jury trial has been waived. Moreover, plaintiff points out the C. Phoenix is a Martindale-Hubbell AV-rated attorney licensed to practice law in Florida and Michigan, a Florida Board Certified Real Estate Attorney, and a certified public account licensed to practice in Michigan.  C. Phoenix is also the managing partner of Rhodes Tucker, the firm representing defendants in this action. (Doc. #45, p. 13.)  The evidence further shows that C. Phoenix was the President of Legal Outsource and the Manager of Periwinkle, and that he executed the loan documents on behalf of said entities; thus, his sophistication and experience can be imputed to the entities.

With respect to the parties' relative bargaining power and the opportunity to negotiate, the allegations in the Counterclaim suggest that the lending relationship between Regions Bank and

defendants was subject to regular and ongoing negotiation, and that the parties both enjoyed a measure of bargaining power.

In sum, the Court concludes that defendants, with exception to the guaranty of the Legal Outsource Loan, knowingly, intelligently, and voluntarily waived their right to trial by jury.

Accordingly, it is now

**ORDERED:**

1.   Plaintiff's Motion to Dismiss Counterclaim (Doc. #45) is **GRANTED** in part and **DENIED** in part.  Counterclaims I, II, III, and VIII are **dismissed without prejudice.**   The motion is otherwise denied.

2.   Plaintiff's Motion to Strike Demand for Trial by Jury (Doc. #45) is **GRANTED** in part and **DENIED** in part.   The demand for trial by jury is **STRICKEN** as to Counterclaims I-V, VII, and VIII. The motion is otherwise denied.

3.   Defendants may file an Amended Counterclaim within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this ___9th___ day of July, 2015.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record