UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

REGIONS BANK, an Alabama state chartered bank,

    Plaintiff,

v.                                    Case No: 2:14-cv-476-FtM-29MRM

LEGAL OUTSOURCE PA, a florida professional association, PERIWINKLE PARTNERS LLC, a florida limited liability company, CHARLES PAUL-THOMAS PHOENIX, individually, and LISA M. PHOENIX, individually,

    Defendants.

## OPINION AND ORDER

This matter comes before the Court on review of plaintiff's Motion to Dismiss Amended Counterclaim and Motion to Strike Demand for Trial by Jury (Doc. #72) filed on August 20, 2015. Defendants Periwinkle Partners LLC and Charles Phoenix filed a Response plaintiff's motion to dismiss (Doc. #73) on September 8, 2015. Defendants filed another response (Doc. #75) on September 11, 2015.[1]

---

[1] The Court notes that the September 11, 2015 Response was essentially a motion for leave to amend their initial Response. The Court finds no prejudice to the parties in considering the amended response (Doc. #75) when ruling on the Motion to Dismiss.

**I.**

Plaintiff Regions Bank ("plaintiff" or "Regions Bank") initiated this foreclosure action on August 20, 2014, by filing a Verified Complaint against Legal Outsource PA ("Legal Outsource"), Periwinkle Partners LLC ("Periwinkle"), Charles Paul-Thomas Phoenix ("C. Phoenix"), and Lisa M. Phoenix ("L. Phoenix") (collectively, "defendants").  (Doc. #1.)  On October 6, 2014, each defendant filed a motion to dismiss and motion to strike the Verified Complaint. (Docs. ##24-28.)  The Court denied the motions on December 11, 2014 (Doc. #38), and defendants subsequently filed an Answer and Affirmative Defenses to Verified Complaint, Counterclaims, and Demand for Trial by Jury.  (Doc. #41).  On February 6, 2015, plaintiff moved to dismiss the counterclaims and to strike defendants' demand for jury trial.  (Doc. #45.)  The Court granted in part and denied in part the motion (Doc. #68), and defendants filed an Amended Counterclaim on July 27, 2015. (Doc. #70.)

Periwinkle asserts counterclaims against Regions Bank for breach of the implied covenant of good faith and fair dealing (counterclaim I), violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (counterclaim II), breach of contract (counterclaim III), constructive fraud (counterclaim IV), and breach of fiduciary duty (counterclaim V), and C. Phoenix asserts counterclaims for declaratory judgment (counterclaim VI),

2

constructive fraud (counterclaim VII), and violation of the FDUTPA (counterclaim VIII). (Doc. #70.) Plaintiff moves to dismiss counterclaims I, II, III, and VIII and to strike defendant's demand for jury trial in counterclaims II, VI, and VIII. (Doc. #72.)

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations

3

omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012)(internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### III.

The facts alleged in the Amended Counterclaim are as follows: In 2005, Regions Bank provided Legal Outsource with a $450,000 revolving line of credit pursuant to the terms of several written loan documents (the "Legal Outsource Loan"). (Doc. #70, ¶ 8.) The obligation secured by the line of credit matured on February 1, 2014, and was not paid in full. (Id. ¶ 22.) Prior to the default, the course of dealing between Regions Bank and Legal Outsource was such that Regions Bank historically renewed the loan upon maturity. (Id. ¶ 10.)

Plaintiff asserts that C. Phoenix executed and delivered a Commercial Guaranty to Regions Bank on May 30, 2013, absolutely and unconditionally guaranteeing repayment of the Legal Outsource

4

Loan. Defendants allege that the signature on the Commercial Guaranty is a forgery. (Id. ¶¶ 11-16.)

In 2011, Regions Bank and Periwinkle executed a loan agreement related to real estate (the "Periwinkle Loan") located at 2407 Periwinkle Way, Sanibel, Florida (the "Property"). (Id. ¶ 17.) Both L. Phoenix and C. Phoenix provided plaintiff with written guaranties of the Periwinkle Loan pursuant to a "Business Loan Agreement." (Id.) Legal Outsource also executed a Commercial Guaranty absolutely and unconditionally guaranteeing repayment of the Periwinkle Loan.[2] (Id. ¶ 22.) The Periwinkle Loan matures on

---

[2] The "Periwinkle Loan Documents," as identified in plaintiff's Verified Complaint, consist of a Promissory Note in the original principal amount of $1,680,000, executed and delivered by Periwinkle to plaintiff on August 26, 2011 (Doc. #1-6); a Business Loan Agreement executed and delivered by Periwinkle to plaintiff on August 26, 2011 (Doc. #1-7); a Promissory Note in the original principal amount of $1,621,528, executed and delivered by Periwinkle to plaintiff on February 1, 2013 (Doc. #1-8); an Amendment to Promissory Note (Doc. #1-9); a Mortgage executed and delivered by Periwinkle to plaintiff on August 26, 2011 and granting Regions Bank a security interest and mortgage lien in certain collateral located at 2407 Periwinkle Way, Sanibel, Florida 33957 (Doc. #1-10); an Assignment of Rents, executed and delivered by Periwinkle to secure the obligation (Doc. #1-11); a Commercial Security Agreement executed and delivered by Periwinkle to plaintiff on August 26, 2011 (Doc. #1-12); a Commercial Guaranty executed and delivered by Legal Outsource to Regions Bank on August 26, 2011, absolutely and unconditionally guaranteeing repayment of the obligation incurred by Periwinkle (Doc. #1-13); a Commercial Guaranty executed and delivered by C. Phoenix to Regions Bank on August 26, 2011, absolutely and unconditionally guaranteeing repayment of the obligation incurred by Periwinkle (Doc. #1-14); and a Commercial Guaranty executed and delivered by L. Phoenix to Regions Bank on August 26, 2011, absolutely and unconditionally

November 26, 2018, and Periwinkle has never missed a scheduled payment. (Id. ¶¶ 17-18.)

After it obtained the Periwinkle Loan in August 2011, Periwinkle improved the Property by replacing the roofs, painting the exterior of the buildings, making minor repairs, significantly improving the lift station, and completely remodeling one of the buildings. (Id. ¶ 23.) As a result of the improvements, the Property's fair market value exceeds the balance due on the Periwinkle Loan. (Id. ¶ 25.)

In 2013, Regions Bank started causing defendants operational and financial difficulty by repeatedly demanding financial information that had already been provided. (Id. ¶ 29.) Regions Bank also maintained that Periwinkle violated the "debt service coverage ratio" covenants in October 2013, and asserted a default under the Periwinkle Loan Documents. (Id. ¶ 30.) After Periwinkle demonstrated that Regions Bank's internal calculations did not follow the formula expressed in the loan documents, Regions Bank discontinued its pursuit of this alleged default. (Id.)

On several occasions, Regions Bank asked Periwinkle to collateralize the Legal Outsource Loan with the Property and pressured Periwinkle to pay off the Periwinkle Loan prior to its

---

guaranteeing repayment of the obligation incurred by Periwinkle (Doc. #1-15).

November 26, 2018 maturity date. (Id. ¶ 32.) Regions Bank also asked Legal Outsource and Periwinkle to refinance their respective loans with another lender. (Id.)

The Legal Outsource Loan matured on February 1, 2014, and was not paid in full, constituting an event of default. Regions Bank notified Legal Outsource and C. Phoenix of the default and demanded payment in full via a demand letter dated April 4, 2014. (Doc. #70-8.) Legal Outsource and C. Phoenix, however, did not cure the default. (Doc. #70, ¶ 32.)

On April 24, 2014, Regions Bank, by way of letter, notified Periwinkle of the maturity of the Legal Outsource Loan and stated that neither Legal Outsource nor C. Phoenix had paid off the debt. (Doc. #70-9.) The letter further stated that Legal Outsource and C. Phoenix are guarantors of a loan between Regions Bank and Periwinkle and that their default on the Legal Outsource Loan is an event of default pursuant to the terms of the Periwinkle Loan. (Id.) Regions Bank indicated that it would not initiate litigation as result of the alleged default if it was provided with a term sheet from another lender indicating its willingness to refinance the debt on or before May 9, 2014. (Id.)

In a subsequent letter to Periwinkle, dated June 17, 2014, Regions Bank falsely asserted that "an additional event of default exists in that The AT Phoenix Company, which was represented to the Bank as the sole member of Periwinkle Partners LLC, has

7

apparently transferred its interest to third parties." (Doc. #70-11.) Another event of default was identified in a letter dated June 20, 2014, specifically that Periwinkle failed to pay the 2013 ad valorem taxes on the Property. (Doc. #70-12.) Defendants allege that Regions Bank's position with regard to the 2013 ad valorem taxes on the Property differed from its position as to the 2011 and 2012 ad valorem taxes on the Property. (Doc. #70, ¶ 34.) Defendants have yet to cure the alleged defaults, prompting the initiation of this action.

**A. Breach of Contract**

Plaintiff asserts that defendants' Amended Counterclaim fails to state a claim for breach of contract. (Doc. #72, pp. 5-7.) A claim for breach of contract under Florida law requires proof of three elements: (1) the existence of a valid contract; (2) a material breach; and (3) damages. <u>Havens v. Coast Fla., P.A.</u>, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013).

Pursuant to the Court's previous order (Doc. #68), Periwinkle amended its breach of contract counterclaim. (Doc. #70, pp. 17-19.) In the Amended Counterclaim, Periwinkle alleges that Regions Bank and defendants are parties to the Periwinkle Loan Documents and that plaintiff "violated the express terms or spirit of the [Periwinkle] loan documents" by wrongfully asserting defaults under the Periwinkle Loan Documents for violation of the debt service coverage ratio covenants, transfer of Periwinkle's

8

interests to third parties, and the status of the Legal Outsource Loan. (Id. ¶ 67.) Lastly, Periwinkle asserts that it is seeking damages incurred as a result of plaintiff's breach of the Periwinkle Loan Documents. (Id. at 17-19.)

The Court will strike "or spirit," but finds that Periwinkle has plausibly stated a claim for breach of contract arising out of the Periwinkle Loan Documents. Accordingly, plaintiff's motion to dismiss counterclaim III is denied.

**B. Breach of Implied Covenant of Good Faith and Fair Dealing**

In counterclaim I, Periwinkle again alleges that Regions Bank breached the Periwinkle Loan Documents' implied covenant of good faith and fair dealing. (Id. at 14-15.) Plaintiff moves to dismiss counterclaim I on the basis that Periwinkle has failed to state a claim for breach of contract and subsequently cannot state a claim for breach of implied covenant of good faith and fair dealing. (Doc. #72, p. 6-7.)

Under Florida law, every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations. "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." Centurion Ari Cargo v. UPS Co., 420 F.3d 1146, 1151 (11th Cir. 2005) (citing Cox v. CSX

9

Intermodal, Inc., 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999)). The Eleventh Circuit has held that "a claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." Id. at 1152.

Here, Periwinkle has alleged that plaintiff violated express terms of the Periwinkle Loan Documents and, as a result, has interfered with defendants' reasonable expectations. (Doc. #70, pp. 14-15.) Specifically, defendants allege that plaintiff wrongfully claimed events of default had occurred and accelerated the loan in direct violation of the terms of the Periwinkle Loan Documents. (Id. at 14-15, 17-18) The Court finds that Periwinkle has plausibly stated a claim for breach of implied covenant of good faith and fair dealing. Accordingly, plaintiff's Motion to Dismiss counterclaim I is denied.

### C. Violation of FDUTPA

Plaintiff again asserts that counterclaims II and VIII of the Amended Counterclaim should be dismissed because the FDUTPA does not apply to Regions Bank. (Doc. #72, pp. 7-10.) Despite the Court's previous order dismissing defendants' FDUTPA claims, defendants included FDUTPA claims in its Amended Counterclaim, arguing that because the activity at issue in the lawsuit, the servicing of the Periwinkle Loan Documents, is not subject to federal regulatory authority, the plaintiff is not protected by

10

the safe harbor provision Fla. Stat. § 501.212(4)(c). (Doc. #75, pp. 6-9.)

As previously stated, by its express terms, the FDUTPA "does not apply to . . . [a]ny person or activity regulated under laws administered by . . . [b]anks or savings and loan associations regulated by federal agencies." Fla. Stat. § 501.212(4)(c) (emphasis added). Courts have clearly held that pursuant to the provisions under § 501.212(4), "FDUTPA does not apply to banks and savings and loan associations regulated by the state or the federal government." Bankers Tr. Co. v. Basciano, 960 So. 2d 773, 778 (Fla. 5th DCA 2007). See also Wilson v. EverBank, N.A., 77 F. Supp. 3d 1202, 1221 (S.D. Fla. 2015); George v. Wells Fargo Bank, N.A., No. 13-80776-CIV, 2014 WL 61487, at *5 (S.D. Fla. Jan. 8, 2014); Sovereign Bonds Exch. LLC v. Federal Republic of Germany, 899 F. Supp. 2d 1304, 1315-16 (S.D. Fla. 2010).

Defendants argue, however, that although plaintiff is regulated by the FDIC, the FDIC only regulates plaintiff's activities relating to the deposit insurance on individual accounts and not plaintiff's lending practices or collection activities, which are the subject of this litigation. (Doc. #75, p. 7.) Therefore, according to defendants, because the activities at issue in the underlying litigation are not those subject to regulation by the FDIC, plaintiff is not entitled to utilize the safe harbor exemption of Fla. Stat. § 501.212(4)(c). (Id.) In

11

support, plaintiff cites to W.S. Badcock Corp. v. Myers, 696 So. 2d 776 (Fla. 1st DCA 1996) for the proposition that in determining whether one of the safe harbors identified in Fla. Stat. § 501.212(4) provides exemption from an FDUPTA claim, the Court must first ask (1) whether the party is regulated by a federal agency and, if so, (2) whether the activity at issue is subject to the federal regulatory authority. (Doc. #75, p. 7) (citing W.S. Badcock Corp., 696 So. 2d at 782).

A review of the governing case law reveals some ambiguity in regard to whether being regulated by a federal agency is sufficient in and of itself to be exempt under Fla. Stat. § 501.212(4)(c) or if, in addition to being federally regulated, the activity at issue must be subject to the federal regulatory authority. Compare Bankers Tr. Co., 960 So.2d at 779 (finding Fla. Stat. § 501.212(4)(c) unambiguously excludes banks without considering the activity in question), and Wilson, 77 F. Supp. 3d at 1221 (same), and Groves v. U.S. Bank, No. 8:10-CV-2665-T-17TGW, 2011 WL 2192821, at *7 (M.D. Fla. June 6, 2011) (same), and Sovereign Bonds Exch. LLC, 899 F. Supp. 2d at 1315-16 (same), with U.S. Bank Nat' Ass'n. v. Capparelli, No. 13-80323-CIV, 2014 WL 2807648, at *1 (S.D. Fla. June 20, 2014). The majority of Florida courts take the former position.

The activities at issue in the underlying case relate to the servicing of the Periwinkle Loan Documents. (Doc. #70.) Small

12

business loans, and collection actions regarding same, are activities regularly within the scope of activities and services provided by banks. Even if, as defendants assert, the Court must answer both questions articulated in W.S. Badcock Corp., 696 So.2d 776 in the affirmative, plaintiff would still be entitled to the safe harbor under Fla. Stat. § 501.212(4)(c).

The Court has taken judicial notice that Regions Bank is regulated by the Federal Reserve Board and has been insured by the Federal Deposit Insurance Corporation since 1934.[3] (Doc. #68, p. 10 n.2.) As a member bank of the Federal Reserve, plaintiff is subject the Federal Reserve's regulations, including the consumer protection regulations. See 12 U.S.C. § 324; Bd. of Governors of the Fed. Reserve Sys., The Federal Reserve System: Purposes and Functions 75-81 (9th ed. 2005), http://www.federalreserve.gov/pf/pdf/pf_complete.pdf. The Federal Reserve has a "Consumer Complaint Program" where the Board responds to inquiries and complaints in a database "which it regularly reviews to identify potential problems . . . [and] uncover potentially unfair and deceptive practices within the banking industry." Id. at 77. The

---

[3] See Fed. Deposit Ins. Corp., BankFind: Regions Bank (FDIC #12368), https://research.fdic.gov/bankfind/detail.html?bank=12368&name=Regions%20Bank&searchName=REGIONS%20BANK&searchFdic=&city=&state=%20&zip=&address=&tabId=1 (last visited Nov. 25, 2015). Although plaintiff is an Alabama state-chartered bank, it is a member bank of the Federal Reserve and thus subject to regulation by the Federal Reserve. Id.

actions complained of in this matter fall within the realm of the Federal Reserve's regulatory authority. Accordingly, counterclaims II and VIII are dismissed with prejudice.

### IV.

Defendants' Amended Counterclaim renews their demands for jury trial for counterclaims II, VI, and VIII. (Doc. #70, p. 1.) Plaintiff asks the Court to strike the demands for jury trial because defendants have knowingly, voluntarily, and intelligently waived any right to a trial by jury. (Doc. #72, pp. 10-13.) In response, defendants assert that C. Phoenix did not waive his right to jury trial with respect to counterclaims VI and VIII and that Periwinkle did not waive its right to a jury trial with respect to counterclaim II. (Doc. #75, pp. 10-11.)

"A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary." Bakrac, Inc. v. Villager Franchise Sys., Inc., 164 F. App'x 820, 823 (11th Cir. 2006). To determine whether a jury trial waiver is knowing and voluntary, courts consider, among other factors: (1) the conspicuousness of the provision of the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel. See Collins v. Countrywide Home Loans, Inc., 680 F. Supp. 2d 1287, 1294 (M.D.

Fla. 2010); Allyn v. W. United Life Assurance Co., 347 F. Supp. 2d 1246, 1251 (M.D. Fla. 2004).  No single factor is determinative; rather, the Court must determine "whether, in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair." Allyn, 347 F. Supp. 2d at 1252.

As previously found, C. Phoenix knowingly and voluntarily waived his right to jury trial as to counterclaim VIII and Periwinkle knowingly and voluntarily waived its right to jury trial as to counterclaim II. (Doc. #68, pp. 14-16.)  For the reasons articulated by the Court previously (Id.), the Court finds that C. Phoenix and Periwinkle waived their rights to a jury trial for counterclaims II and VIII of the Amended Counterclaim.

Due to the question of authenticity of C. Phoenix's signature on the Commercial Guaranty, the Court previously declined to strike the demand for jury trial in counterclaim VI due to allegations of forgery supported by the Expert Declaration and the Affidavit of Charles PT Phoenix. (See id. at 14.)  Plaintiff now points to the fact that the Expert Declaration only states that the signature on the "FL Agreement to Waive Garnishment Protection" is a forgery, and does not state that the signature on the Commercial Guaranty is a forgery.  (Doc. #72, pp. 10-11.)  Plaintiff is correct that the Expert Declaration does not address whether the signature on the Commercial Guaranty is a forgery, however it does not say that

the signature on the Commercial Guaranty is not a forgery. Further, the Court did not base its decision solely upon the Expert Declaration, but also upon the Affidavit of Charles PT Phoenix whereby C. Phoenix states that the signature on page 4 of Exhibit C to plaintiff's Verified Complaint is not his. (Doc. #70-3, ¶ 9.) Accordingly, the Court denies plaintiff's motion to strike defendants' demand for jury trial in counterclaim VI.

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion to Dismiss First Amended Counterclaim (Doc. #72) is **GRANTED in part and DENIED in part.**

2. Plaintiff's Motion to Dismiss counterclaims I and III is **denied**, except "or spirit" is stricken from Count III.

3. Plaintiff's Motion to Dismiss counterclaims II and VIII is **granted**.

4. Plaintiff's Motion to Strike the jury demand is **granted** as to counterclaims II and VIII and **denied** as to counterclaim VI.

5. Plaintiff shall have **FOURTEEN (14) days** from the date of this Order to file a responsive pleading to defendants' Amended Counterclaim.

**DONE AND ORDERED** at Fort Myers, Florida, this __3rd__ day of December, 2015.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record