UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

REGIONS BANK, an Alabama state chartered bank,

Plaintiff,

v. Case No: 2:14-cv-476-FtM-29MRM

LEGAL OUTSOURCE PA, a Florida professional association, PERIWINKLE PARTNERS LLC, a Florida limited liability company, CHARLES PAUL-THOMAS PHOENIX, individually, and LISA M. PHOENIX, individually,

Defendants.

---

**OPINION AND ORDER**

This matter comes before the Court on review of plaintiff/counter-defendant Region Bank's Motion to Dismiss Second Amended Counterclaim, Motion to Strike Demand for Trial by Jury, and Incorporated Memorandum of Law (Doc. #141) filed on February 23, 2016. Defendants/counter-plaintiffs filed a Response (Doc. #218) on April 21, 2016. Also before the Court is plaintiff/counter-defendant Regions Bank's Motion to Bifurcate for Purposes of Trial Count VI of Counterclaim, the Forgery Count (Doc. #84) filed November 30, 2015, to which defendants/counter-plaintiffs filed a Response (Docs. ## 113, 114) on December 18, 2015.

**I.**

Plaintiff Regions Bank ("plaintiff" or "Regions Bank") initiated this foreclosure action on August 20, 2014, by filing a Verified Complaint against Legal Outsource PA ("Legal Outsource"), Periwinkle Partners LLC ("Periwinkle"), Charles Paul-Thomas Phoenix ("C. Phoenix"), and Lisa M. Phoenix ("L. Phoenix") (collectively, "defendants"). (Doc. #1.) On October 6, 2014, each defendant filed a motion to dismiss and motion to strike the Verified Complaint. (Docs. ##24-28.) The Court denied the motions on December 11, 2014 (Doc. #38), and defendants subsequently filed an Answer and Affirmative Defenses to Verified Complaint, Counterclaims, and Demand for Trial by Jury, (Doc. #41). On February 6, 2015, plaintiff moved to dismiss the counterclaims and to strike defendants' demand for jury trial. (Doc. #45.) The Court granted in part and denied in part the motion (Doc. #68), and defendants filed an Amended Counterclaim on July 27, 2015, (Doc. #70). On August 20, 2015, plaintiff filed a Motion to Dismiss Amended Counterclaim, Motion to Strike Demand for Jury Trial, and Incorporated Memorandum of Law. (Doc. #72.) On December 3, 2015, the Court granted in part and denied in part plaintiff's Motion to Dismiss Amended Counterclaim. (Doc. #99.) Defendant moved for leave to file a Second Amended Counterclaim, which was granted, and defendant filed their First Amended Answer

and Affirmative Defenses and Second Amended Counterclaim (Doc. #137) on February 9, 2016.

Periwinkle asserts counterclaims against Regions Bank for breach of implied covenant of good faith and fair dealing (counterclaim I), breach of contract (counterclaim III), constructive fraud (counterclaim IV), and breach of fiduciary duty (counterclaim V).[1] (Doc. #137, pp. 41-46, 53-53.) Charles Phoenix asserts counterclaims for declaratory judgment (counterclaim VI) and constructive fraud (counterclaim VII).[2] (Id. at 46-47.) All defendants assert counterclaims for violation of the Equal Credit Opportunity Act (counterclaims IX, X, XI, XII). (Id. at 47-59.) Plaintiff now moves to dismiss counterclaims IX, X, XI, and XII for violations of the Equal Credit Opportunity Act and to strike defendants' demands for jury trial as to counterclaims VI, IX, X, XI, and XII. (Doc. #141.)

## II. Motion to Dismiss

### A. Standard of Review

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." Great Am. Assurance Co. v. Sanchuk, LLC, No. 8:10-cv-2568-T-33AEP, 2012 WL 195526, at *2 (M.D.

[1] Counterclaim II was previously dismissed by this Court.
[2] Counterclaim VIII was previously dismissed by this Court.

Fla. Jan. 23, 2012) (citation omitted). Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333,

1337 (11th Cir. 2012)(internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**B. Facts**

The facts alleged in the Second Amended Counterclaim are as follows: In 2005, Regions Bank provided Legal Outsource with a $450,000 revolving line of credit pursuant to the terms of several written loan documents (the "Legal Outsource Loan"). (Doc. #137, ¶ 8.) The obligation secured by the line of credit matured on February 1, 2014, and was not paid in full. (Id. ¶ 22.) Prior to the default, the course of dealing between Regions Bank and Legal Outsource was such that Regions Bank historically renewed the loan upon maturity. (Id. ¶ 10.)

Plaintiff asserts that C. Phoenix executed and delivered a Commercial Guaranty to Regions Bank on May 30, 2013, absolutely and unconditionally guaranteeing repayment of the Legal Outsource Loan. (Id. ¶ 11.) Defendants allege that the signature on the Commercial Guaranty is a forgery. (Id. ¶¶ 11-16.)

In 2011, Regions Bank and Periwinkle executed a loan agreement related to real estate (the "Periwinkle Loan") located at 2407 Periwinkle Way, Sanibel, Florida (the "Property"). (Id. ¶ 17.) Both L. Phoenix and C. Phoenix provided plaintiff with written

guaranties of the Periwinkle Loan pursuant to a "Business Loan Agreement." (Id.) Legal Outsource also executed a Commercial Guaranty absolutely and unconditionally guaranteeing repayment of the Periwinkle Loan.[3] (See id. ¶ 22.) The Periwinkle Loan matures on November 26, 2018, and Periwinkle has never missed a scheduled payment. (Id. ¶¶ 17-18.)

After it obtained the Periwinkle Loan in August 2011, Periwinkle improved the Property by replacing the roofs, painting the exterior of the buildings, making minor repairs, significantly

[3]The "Periwinkle Loan Documents," as identified in plaintiff's Verified Complaint, consist of a Promissory Note in the original principal amount of $1,680,000, executed and delivered by Periwinkle to plaintiff on August 26, 2011 (Doc. #1-6); a Business Loan Agreement executed and delivered by Periwinkle to plaintiff on August 26, 2011 (Doc. #1-7); a Promissory Note in the original principal amount of $1,621,528, executed and delivered by Periwinkle to plaintiff on February 1, 2013 (Doc. #1-8); an Amendment to Promissory Note (Doc. #1-9); a Mortgage executed and delivered by Periwinkle to plaintiff on August 26, 2011 and granting Regions Bank a security interest and mortgage lien in certain collateral located at 2407 Periwinkle Way, Sanibel, Florida 33957 (Doc. #1-10); an Assignment of Rents, executed and delivered by Periwinkle to secure the obligation (Doc. #1-11); a Commercial Security Agreement executed and delivered by Periwinkle to plaintiff on August 26, 2011 (Doc. #1-12); a Commercial Guaranty executed and delivered by Legal Outsource to Regions Bank on August 26, 2011, absolutely and unconditionally guaranteeing repayment of the obligation incurred by Periwinkle (Doc. #1-13); a Commercial Guaranty executed and delivered by C. Phoenix to Regions Bank on August 26, 2011, absolutely and unconditionally guaranteeing repayment of the obligation incurred by Periwinkle (Doc. #1-14); and a Commercial Guaranty executed and delivered by L. Phoenix to Regions Bank on August 26, 2011, absolutely and unconditionally guaranteeing repayment of the obligation incurred by Periwinkle (Doc. #1-15).

improving the lift station, and completely remodeling one of the buildings. (Id. ¶ 23.) As a result of the improvements, the Property's fair market value exceeds the balance due on the Periwinkle Loan. (Id. ¶ 25.)

In 2013, Regions Bank started causing defendants operational and financial difficulty by repeatedly demanding financial information that had already been provided. (Id. ¶ 29.) Regions Bank also maintained that Periwinkle violated the "debt service coverage ratio" covenants in October 2013, and asserted a default under the Periwinkle Loan Documents. (Id. ¶ 30.) After Periwinkle demonstrated that Regions Bank's internal calculations did not follow the formula expressed in the loan documents, Regions Bank discontinued its pursuit of this alleged default. (Id.)

On several occasions, Regions Bank asked Periwinkle to collateralize the Legal Outsource Loan with the Property and pressured Periwinkle to pay off the Periwinkle Loan prior to its November 26, 2018 maturity date. (Id. ¶ 32.) Regions Bank also asked Legal Outsource and Periwinkle to refinance their respective loans with another lender. (Id.)

The Legal Outsource Loan matured on February 1, 2014, and was not paid in full, constituting an event of default. (Id. ¶ 22.) Regions Bank notified Legal Outsource and C. Phoenix of the default and demanded payment in full via a demand letter dated April 4,

2014. (Doc. #137-8.) Legal Outsource and C. Phoenix, however, did not cure the default.

On April 24, 2014, Regions Bank, by way of letter, notified Periwinkle of the maturity of the Legal Outsource Loan and stated that neither Legal Outsource nor C. Phoenix had paid off the debt. (Doc. #137-9.) The letter further stated that Legal Outsource and C. Phoenix are guarantors of a loan between Regions Bank and Periwinkle and that their default on the Legal Outsource Loan is an event of default pursuant to the terms of the Periwinkle Loan. (Id.) Regions Bank indicated that it would not initiate litigation as result of the alleged default if it was provided with a term sheet from another lender indicating its willingness to refinance the debt on or before May 9, 2014. (Id.)

In a subsequent letter to Periwinkle, dated June 17, 2014, Regions Bank falsely asserted that "an additional event of default exists in that The AT Phoenix Company, which was represented to the Bank as the sole member of Periwinkle Partners LLC, has apparently transferred its interest to third parties." (Doc. #137-11.) Another event of default was identified in a letter dated June 20, 2014, specifically that Periwinkle failed to pay the 2013 ad valorem taxes on the Property. (Doc. #137-12.) Defendants allege that Regions Bank's position with regard to the 2013 ad valorem taxes on the Property differed from its position as to the 2011 and 2012 ad valorem taxes on the Property. (Doc. #137, ¶

34.) Defendants have yet to cure the alleged defaults, prompting the initiation of this action.

**C. Equal Credit Opportunity Act**

Plaintiff moves to dismiss counterclaims nine through twelve of defendants' Second Amended Counterclaim for failure to state a claim under the Equal Credit Opportunity Act ("ECOA"). (Doc. #141, pp. 5-7.) Plaintiff asserts that counterclaims 9-12 "are all brought by guarantors of the Periwinkle Obligation, none of whom is an 'applicant' within the ambit of the ECOA." (Id. at 7.)

The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of . . . marital status." 15 U.S.C. § 1691. The statute defines "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an account exceeding a previously established credit limit." 15 U.S.C. § 1691a(b).

Defendants rely on the Federal Reserve's interpretation of the statutory definition which defines an applicant as "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. For purposes of § 202.7(d), **the term includes guarantors**, sureties,

endorsers, and similar parties." 12 C.F.R. § 202.2(e) (emphasis added).

As was the precise issue in Hawkins v. Community Bank of Raymore, 761 F.3d 937 (8th Cir. 2015), aff'd, 136 S. Ct. 1072 (2016) (Mem.), "[t]his case turns on, then, whether we should apply § 202.2(e)'s definition of applicant, which would permit [defendants] to pursue an ECOA claim as applicants solely because they executed guarantees to secure [the] loan[s]." Id. at 940. The Eighth Circuit applied the two-step framework laid out in Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984), and held that "[b]cause the text of the ECOA is unambiguous regarding whether a guarantor constitutes an applicant, we will not defer to the Federal Reserve's interpretation of an applicant . . . ." Hawkins, 761 F.3d at 942. Accordingly, the Eighth Circuit held that "a guarantor is not protected from marital-status discrimination by the ECOA." Id. The Supreme Court affirmed the decision on appeal. Hawkins v. Cmty. Bank of Raymore, 136 S. Ct. 1072 (2016) (Mem.). As such, this Court holds that to the extent that defendants are asserting their counterclaims for violation of the ECOA in their capacities as guarantors, those claims are due to be dismissed.

Counterclaim IX is asserted by C. Phoenix in his capacity as a guarantor to the loan made by plaintiff to Periwinkle Partners. (Doc. #137, pp. 47-50.) Accordingly, the Court dismisses

counterclaim IX with prejudice. Counterclaim X is asserted by Legal Outsource as a guarantor to the loan made by plaintiff to Periwinkle Partners. (Id. at 50-53.) Accordingly, the Court dismisses counterclaim X with prejudice. Counterclaim XI is asserted by L. Phoenix and Periwinkle Partners. (Id. at 53-56.) The Second Amended Counterclaim alleges that L. Phoenix and Periwinkle Partners were applicants for the loan at issue. (Id. ¶ 112.) Pursuant to the Periwinkle loan documents,[4] it appears that the Periwinkle loan was solely between Periwinkle Partners and plaintiff, and L. Phoenix was merely a guarantor. (Docs. ##1-6 – 1-15.) However, to the extent that L. Phoenix is an applicant under 15 U.S.C. § 1691a(b), as alleged, the Court denies plaintiff's motion to dismiss. At this stage of the proceedings, the Court finds that L. Phoenix and Periwinkle Partners have sufficiently alleged that they are applicants under the ECOA. Accordingly, plaintiff's motion to dismiss counterclaim XI is denied. Counterclaim XII is asserted by L. Phoenix as a guarantor

[4] Although the loan documents are attached to the complaint and not to the counterclaim, the counterclaim seeks damages for violations of the ECOA arising out of the loan documents. Thus, the Court may properly consider the terms of the loan documents without converting the motion to dismiss into a motion for summary judgment when ruling on plaintiff's motion to dismiss. FSC Franchise Co. v. Express Corp. Apparel, LLC, No. 8:09-cv-454-T-23TGW, 2009 WL 3200656, at *1 n. 1 (M.D. Fla. Oct. 2, 2009) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th Cir. 2000)).

to the loan made by plaintiff to Periwinkle Partners. (Doc. #137, pp. 56-59.) Accordingly, the Court dismisses counterclaim XII with prejudice.

**D. Jury Trial Waiver**

Defendants' Second Amended Counterclaim demands trial by jury for counterclaims VI, IX, X, XI, and XII. (Id. at 29.) Plaintiff moves to strike the demands for jury trial on the basis that counterclaimants have knowingly, voluntarily, and intelligently waived any right to trial by jury. (Doc. #141, pp. 7-11.) In response, defendants assert that a waiver cannot be based on guarantees that were obtained in violation of the ECOA and that the Court has declined to strike defendants' jury demand in counterclaim VI on two previous occasions. (Doc. #218, p. 11.)

"A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary." Bakrac, Inc. v. Villager Franchise Sys., Inc., 164 F. App'x 820, 823 (11th Cir. 2006). To determine whether a jury trial waiver is knowing and voluntary, courts consider, among other factors: (1) the conspicuousness of the provision of the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel. See Collins v. Countrywide Home Loans, Inc., 680 F. Supp. 2d 1287, 1294 (M.D.

Fla. 2010); Allyn v. W. United Life Assurance Co., 347 F. Supp. 2d 1246, 1251 (M.D. Fla. 2004). No single factor is determinative; rather, the Court must determine "whether, in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair." Allyn, 347 F. Supp. 2d at 1252.

As previously held (Doc. #68, p. 14; Doc. #99, pp. 15-16), the Court declines to strike defendants' demand for jury trial in counterclaim VI on account of the forgery allegations.

As to counterclaim XI, plaintiff argues that defendants have knowingly and voluntarily waived their right to a jury trial with respect to the claims arising out of the contracts at issue. (Doc. #141, pp. 7-10.) In response, defendants assert that they have not waived their right to a jury trial because the guarantees were obtained in violation of the ECOA. (Doc. #218, pp. 11-12.)

Assuming a right to a jury trial under the ECOA,[5] courts have held that a party can validly waive its right to a jury trial under the ECOA. Boyd v. U.S. Bank Nat'l Ass'n, No. 06-2115-KGS, 2007 WL 2822518, at *17 (D. Kas. Sept. 26, 2007) ("[T]he court has no

[5] The "ECOA does not provide the right to a jury trial," Anato v. USDA Rural Dev., No. CV 12-103-GF-SHE, 2013 WL 3279534, at *5 (D. Mont. June 27, 2013), and courts have had non-jury trials on ECOA claims, see Mayes v. Chysler Credit Corp, 37 F.3d 9, 10 (1st Cir. 1994) ("A non-jury trial was held in the district court . . . .").

reason to believe that the general presumption that a right to a jury trial afforded by the Seventh Amendment can be waived if done so knowingly and voluntarily would be any different in an ECOA case.”). Accordingly, for the reasons articulated by the Court previously (Doc. #68, pp. 14-16), the Court finds that defendants knowingly and intelligently waived their right to a jury trial as to counterclaim XI.

**III. Motion to Bifurcate**

Plaintiff requests a separate trial on Count VI of the Counterclaim,[6] the Forgery Count. (Doc. #84.) Plaintiff asserts that the witnesses likely to testify in connection with the Forgery Count are limited and specific to the Forgery Count — with the exception of C. Phoenix. (Id. at 5.) Further, plaintiff alleges that if it is successful on the other counts, and if the collateral exceeds the amount awarded, the Forgery Count may become moot. (Id. at 7.) Defendants argue against bifurcation by asserting that the witnesses identified by plaintiff are relevant to other issues in the case and will likely have to be re-called and many issues relevant to count II of plaintiff’s Complaint overlap with

[6] Plaintiff filed its Motion to Bifurcate before the Court ruled on plaintiff’s Motion to Dismiss Amended Counterclaim, the filing of the Second Amended Counterclaim, and before the Motion to Dismiss Second Amended Counterclaim currently before the Court. The Court deems the arguments presented are applicable to the Second Amended Counterclaim and will rule accordingly.

the issues relevant to counterclaim VI – specifically relating to the authenticity of C. Phoenix's signature. (Doc. #113, pp. 3-8.)

Under Rule 42(b) of the Federal Rules of Civil Procedure, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims." The standard under Rule 42(b) is not high and the district court has broad discretion when ruling on a motion to bifurcate. Harrington v. Cleburne Cty. Bd. of Educ., 251 F.3d 935, 938 (11th Cir. 2001). "The predominant consideration is a fair and impartial trial through a balance of benefits and prejudice." Gilbert v. State Farm Mut. Auto. Ins. Co., 311 F.R.D. 685, 686 (M.D. Fla. 2015) (quoting Medtronic Xomed, Inc. v. Gyrus ENT LLC, 440 F. Supp. 2d 1333, 1334 (M.D. Fla. 2006)).

> In addition to the more general factors set forth in Rule 42(b); i.e., (1) convenience; (2) prejudice; (3) expedition; and (4) economy; a court reviewing a motion for separate trials may properly consider (5) whether the issues sought to be tried separately are significantly different; (6) whether they are triable by jury or the court; (7) whether discovery has been directed to a single trial of all issues; (8) whether the evidence required for each issue is substantially different; (9) whether one party would gain some unfair advantage from separate trials; (10) whether a single trial of all issues would create the potential for jury bias or confusion; and (11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement.

Kimberly-Clark Corp. v. James River Corp. of Va., 131 F.R.D. 607, 608 (N.D. Ga. 1989) (citation omitted).

Applying the relevant factors, the Court grants plaintiff's Motion to Bifurcate. Plaintiff's Complaint (Doc. #1) and defendants' Answer and Affirmative Defenses (Doc. #41, pp. 1-21) do not contain jury demands, and the parties' case management report provided the trial would be non-jury, (Doc. #33, p. 3). Defendants' demands for jury trial as to its counterclaims have been stricken as to all counts except for counterclaim VI — the Forgery Count. (Doc. #41, pp. 22-42; Doc. #68, pp. 13-16; Doc. #99, pp. 14-17.) While the Court agrees that some issues overlap between the forgery count and the other counts, parties frequently have to re-call witnesses and present evidence on more than one occasion during the course of a trial. Here, defendants/counter-plaintiffs have waived their right to a jury trial in all but one count. Denying the Motion to Bifurcate would require a jury to sit through countless hours of irrelevant testimony and evidence that does not pertain to the single count that they are deciding. The Court finds the economies that would be achieved by denying the Motion to Bifurcate do not justify the waste of time, and potential confusion, to the jurors. Accordingly, the Court grants plaintiff's Motion to Bifurcate.

Accordingly, it is now

**ORDERED:**

1. Plaintiff Region Bank's Motion to Dismiss Second Amended Counterclaim, Motion to Strike Demand for Trial by Jury, and Incorporated Memorandum of Law (Doc. #141) is **GRANTED in part and DENIED in part.**

2. Counterclaims IX, X, and XII are dismissed with prejudice.

3. Plaintiff's Motion to Strike Demand for Trial by Jury is **DENIED** as to counterclaim VI and **GRANTED** as to counterclaim XI.

4. Plaintiff shall have **FOURTEEN (14) days** from the date of this Opinion and Order to file a responsive pleading to defendants' Second Amended Counterclaim.

5. Plaintiff's Motion to Bifurcate, for Purposes of Trial Count VI of Counterclaim, the Forgery Count (Doc. #84) is **GRANTED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __27th__ day of July, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record