UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

Regions Bank,                                    Civ. No. 2:14-476-FtM-PAM-MRM

                        Plaintiff,

                                                              **AMENDED**
v.                                            **MEMORANDUM AND ORDER**

Legal Outsource PA,
Periwinkle Partners LLC,
Charles Paul-Thomas Phoenix,
and Lisa M. Phoenix

                        Defendants.
_____

        This matter is before the Court on Plaintiff's Motion for Summary Judgment.  For

the following reasons, the Motion is granted in part and denied in part.

**BACKGROUND**

        Beginning in 2005, Defendant Legal Outsource, P.A., had a revolving line of

credit of $450,000 with Plaintiff Regions Bank, renewed on a yearly or semi-yearly basis.

The loan agreement was signed on May 30, 2013, by Legal Outsource and guaranteed by

Defendant Charles Paul-Thomas Phoenix, who is also acting as counsel for all

Defendants here.  (Compl. Exs. A, B, D.)  The 2013 loan matured in February 2014, and

Legal Outsource did not pay it.  On April 4, 2014, Regions demanded full payment under

the loan.  (Id. Ex. E.)

        In 2011, Regions lent nearly $1.7 million to Periwinkle Partners LLC, for the

purchase of a shopping center on Sanibel Island.  (Id. Exs. F-O.)  At the time of the loan

transaction, the sole member of Periwinkle Partners was a company owned by Charles

Phoenix's wife, Lisa Phoenix, called the AT Phoenix Company. Charles Phoenix signed the promissory note as manager of Periwinkle. (Id. Ex. F.) Charles Phoenix, Lisa Phoenix, and Legal Outsource all provided guaranties for the Periwinkle loan. (Id. Ex. M-O.)

Under the terms of the Periwinkle loan, a default of any other loan between the parties constituted an event of default under the Periwinkle loan. (Id. Ex. F.) After the Legal Outsource loan default, Regions declared a default of the Periwinkle loan and sought to accelerate that loan and for full payment of the loan balance. Several months later, Regions amended its default claims for the Periwinkle loan to include as events of default that the AT Phoenix Company transferred its interest in Periwinkle to a third party (1st Am. Answer Ex. 11), and that Periwinkle had failed to pay ad valorem taxes in 2013 (id. Ex. 12).

Defendants claim that Regions decided it wanted the shopping center as collateral for the Legal Outsource line of credit, and began demanding unreasonable documentation from Defendants in 2013. They contend that the Legal Outsource credit line had been renewed yearly since 2005 with no issues, and thus that the "default" in 2014 was a manufactured default to attempt to force Defendants to collateralize the shopping center. Defendants do not contend, however, that they are not in default under the Legal Outsource loan, and cannot dispute that this default constitutes an event of default under the Periwinkle loan as well.

The Complaint contains six counts. Count I claims breach of the Legal Outsource note, Count II claims a breach of the guaranties for the Legal Outsource loan, Count III

claims breach of the Periwinkle note, Count IV claims a breach of the guaranties for the Periwinkle loan, Count V seeks a foreclosure of the Periwinkle property, and Count VI seeks a receivership.

Defendants answered the Complaint and interposed numerous counterclaims. As relevant to Regions's Motion, Counterclaims 1, 3, 4, and 5 assert breach-of-contract, constructive fraud, breach of good faith and fair dealing, and breach of fiduciary duty on behalf of Periwinkle. Counterclaim 6 contends that Charles Phoenix's signature on the Legal Outsource loan guaranty is a forgery, and Counterclaim 7 claims constructive fraud on behalf of Charles Phoenix. Finally, Counterclaim 11 raises a claim for violation of the Equal Credit Opportunity Act on behalf of Periwinkle Partners and Lisa Phoenix.[1]

On July 27, 2016, the Hon. John E. Steele bifurcated the forgery counterclaim (Counterclaim Count 6) from the remaining claims at issue and determined that a jury trial is available only as to the forgery counterclaim. (Docket No. 278.)

**DISCUSSION**

Summary judgment is proper only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).

---

[1] Counterclaims 2, 8, 9, 10, and 12 were dismissed by prior Orders. (Docket Nos. 99, 278.)

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  When opposing a motion for summary judgment, the nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Defendants appear to be confused about the proper standard of review for summary judgment motions.  Defendants insist repeatedly that Regions cannot rely on any fact other than what is pled in the Complaint.  (E.g., Defs.' Opp'n Mem. (Docket No. 350) at 28 ("The Court should disregard 'supposedly new factual support and look only to the factual allegations in the complaint' subject to the summary judgment motion." (quoting Samuels v. Wilder, 871 F.2d 1346 (7th Cir. 1989)).)  But the case on which Defendants rely involved allegations of fraud, which must be pled with particularity under Rule 9(b).  And indeed, in Samuels, the new factual allegations were unrelated to the fraud claim as pled, leading the court to describe the plaintiff's conduct as an "attempted bypass of Rule 9(b)."  Samuels, 871 F.2d at 1349-50.  The claims here, by contrast, are breach-of-contract claims that can be pled generally.  The failure to include a fact in the Complaint does not preclude summary judgment.

4

### A.    Breach of Note/Guaranties

Under Florida law, a claim for breach of a note or breach of a loan guaranty has the same elements as a claim for breach of contract.  Fifth Third Bank v. Alaedin & Majdi Invs., Inc., No. 8:11-cv-2206, 2013 WL 623895, at *3 (M.D. Fla. Feb. 20, 2013). To establish that it is entitled to summary judgment on its breach-of-contract claims, Regions must show that there is no genuine issue of material fact as to (1) the existence of a valid contract; (2) a material breach of that contract; and (3) damages.  Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999).

With the exception of their forgery claim, discussed below, Defendants do not dispute that they were in default under the relevant notes and guaranties.  Rather, Defendants claim that Regions had an ulterior motive in pursuing default under the various notes and guaranties.  But Regions's motives are irrelevant to establishing the elements of its claims.  At most, the motive goes only to the relief to which Regions is entitled.  Summary judgment is appropriate on the breach claims (Counts I – IV.)

### B.    Foreclosure

Count V seeks to foreclose on the Periwinkle property.  But as Defendants note, foreclosure is an equitable remedy and equity requires clean hands.  Moreover, the Periwinkle default was a technical default—there is no allegation that Defendants failed to make their payments under that loan—and it is an open question whether foreclosure will lie for a technical loan default under Florida law.  "[E]quity requires that a defendant in foreclosure be excused where, as here, the defendant is technically in default . . . , the default is cured by the defendant . . . , and the default has not resulted in an impairment of

5

the security." <u>Nazzaro v. Moksel</u>, 483 So. 2d 884, 884 (Fla. Dist. Ct. App. 1986); <u>see also</u> <u>Pezzimenti v. Cirou</u>, 466 So. 2d 274, 276 (Fla. Dist. Ct. App. 1985) ("The general rule in Florida is that there must be impairment of the security before foreclosure is granted and foreclosure must not be unconscionable or inequitable.").

Regions does not address the equitable nature of this remedy, merely arguing that because it is the undisputed holder of the Periwinkle note and mortgage, and the Perwinkle loan is in default, it is entitled to foreclose.  Florida law requires that Regions establish that the default impaired the security, something Regions has not done. Summary judgment on the foreclosure claim is not warranted.

## C.    Counterclaims

Defendants' only argument in response to Regions's Motion for Summary Judgment on the Counterclaims is that Regions's Answer to those Counterclaims was filed several days too late and should be stricken.  But such a drastic remedy for a slightly late filing is simply not appropriate.

Defendants do not offer any other substantive argument regarding their Counterclaims, and Regions has established that those Counterclaims have no merit. Defendants have no evidence that Regions breached the loan agreements, and the breach-Counterclaim thus fails.  Nor do Defendants have any evidence that Regions breached the covenant of good faith and fair dealing.  Even if such evidence existed, under Florida law a breach of the covenant of good faith and fair dealing must be founded on a breach of an express term of the parties' contract.  <u>Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.</u>, 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001).  Without evidence of any breach

of the loan agreements, Defendants have no claim for breach of the covenant of good faith and fair dealing.

Defendants fiduciary-duty claim fails because there was no fiduciary relationship here as a matter of law.  See Jaffe v. Bank of Am., N.A., 667 F. Supp. 2d 1299, 1319 (S.D. Fla. 2009) ("[I]n an arms-length transaction [] there is no duty imposed on either party to act for the benefit or protection of the other party . . . .").  And although Defendants do not even attempt to establish the elements of their claim for constructive fraud, such a claim fails in any event because there was no confidential or fiduciary relationship between Defendants and Regions.  "Under Florida law, constructive fraud occurs 'when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken.'"  Am. Honda Motor Co. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) (quoting Levy v. Levy, 862 So. 2d 48, 53 (Fla. Dist. Ct. App. 2003)).

Defendants' ECOA counterclaim as to Periwinkle Partners is frivolous.  The ECOA prohibits a creditor from discriminating against an "applicant, with respect to any aspect of a credit transaction . . . on the basis of . . . marital status."  15 U.S.C. § 1691. Periwinkle Partners cannot avail itself of the protections of this Act because it is a company, not an individual, and it cannot have a marital status.  The claim fails as to Lisa Phoenix as well because, aside from the lack of any evidence to establish any alleged discrimination on the basis of marital status, she was not an "applicant" for the Periwinkle loan, she was a guarantor.  Defendants contend that a guarantor can be an applicant under the Federal Reserve's interpretation of the ECOA, but Judge Steele

specifically held the opposite in this case: "[T]his Court holds that to the extent that defendants are asserting their counterclaims for violation of the ECOA in their capacities as guarantors, those claims are due to be dismissed." (Order (Docket No. 278) at 10.) The remaining ECOA counterclaim is dismissed.

Finally, Defendants do not address the substance of their forgery counterclaim, and Regions has established that this claim is without merit. In his deposition, Charles Phoenix admitted that the signature he now challenges was his. (C. Phoenix Dep. (Docket No. 313) at 104-05.) Moreover, Defendants' handwriting expert did not opine that the relevant signature was forged. Rather, she opined that a signature on a different document altogether was not legitimate. (Hoetzel Decl. (Docket No. 137-2) ¶ 5 (stating that C. Phoenix's signature on "Agreement to Waive Garnishment" is a forgery).) In opposing Regions's Motion for Summary Judgment, Defendants must come forward with evidence to establish that there are questions of fact as to their forgery claim. They have utterly failed to do so. Summary judgment is therefore granted as to the forgery counterclaim.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Plaintiff's Motion for Summary Judgment (Docket No. 307) is **GRANTED in part** and **DENIED in part**;

2. Plaintiff is entitled to judgment on Counts I, II, III, and IV of its Complaint (Docket No. 1); and

3.    Counterclaim Counts 1, 3, 4, 5, 6, 7, and 11 are **DISMISSED with prejudice**.

Dated:  _____*February 6, 2017*_____

_____*s/ Paul A. Magnuson*_____
Paul A. Magnuson
United States District Court Judge